# EXHIBIT 4

1
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE WESTERN DISTRICT OF TEXAS
2                             MIDLAND DIVISION

3    REDSTONE LOGICS LLC        *
                                *      June 9, 2025
4    VS.                        *
                                * CIVIL ACTION NO. 7:24-CV-231
5    QUALCOMM INC., ET AL.      *

6               BEFORE THE HONORABLE ALAN D ALBRIGHT
                      MARKMAN HEARING (via Zoom)
7
     APPEARANCES:
8
     For the Plaintiff:   Joshua Scheufler, Esq.
9                         Russ August & Kabat
                          12424 Wilshire Blvd
10                        Ste 12 Floor
                          Los Angeles, CA 90025
11
                          Qi (Peter) Tong, Esq.
12                        Russ August & Kabat
                          8080 N. Central Expy., Suite 1503
13                        Dallas, TX 75206

14   For the Defendant:   Eric Conley Green, Esq.
                          Brett A. McKean, Esq.
15                        Norton Rose Fulbright US LLP
                          98 San Jacinto Boulevard, Ste 1100
16                        Austin, TX 78701

17                        Daniel S. Leventhal, Esq.
                          Richard S. Zembek, Esq.
18                        Norton Rose Fulbright US LLP
                          1550 Lamar Street, Suite 2000
19                        Houston, TX 77010

20   Court Reporter:      Kristie M. Davis, CRR, RMR
                          PO Box 20994
21                        Waco, Texas 76702-0994
                          (254) 666-0904
22

23      Proceedings recorded by mechanical stenography,

08:33  24   transcript produced by computer-aided transcription.

25

| 08:33 | 1 | (Hearing begins.) |

DEPUTY CLERK:  A civil action in Case MO:24-CV-231, Redstone Logics LLC versus Qualcomm Incorporated, et al.  Case called for a Markman hearing.

THE COURT:  Announcements from counsel, please.

MR. TONG:  Good morning, Your Honor. This is Peter Tong from Russ August & Kabat.  It's very good to see you.  And with me is Joshua Scheufler.

THE COURT:  Welcome.  I'm sorry if I got y'all up early.  So -- but.  And I see Mr. Zembek.

MR. ZEMBEK:  Yes, Your Honor.  Richard Zembek here.  And I am with Mr. Daniel Leventhal, Eric Green, and Brett McKean.  And I have three client representatives with me:  Mr. Stephen Wurth, Ms. Yon Sohn, Mr. Ken Vu.

We also have a slew of summer clerks that are watching off camera because they wanted to have the opportunity to see what this Markman hearing thing really is all about.

THE COURT:  Well, I hope I pass the audition.  I'm sorry -- I'm sorry we only have one claim term here.

MR. ZEMBEK:  Mr. Leventhal joined so that

| | | |
|---|---|---|
| 09:32 | 1 | he could grade me to the summers, probably rather |
| 09:32 | 2 | harshly afterwards. |
| 09:32 | 3 | THE COURT:  Yeah.  So -- fortunately |
| 09:32 | 4 | summers are probably graded on an easier curve, so. |
| 09:32 | 5 | First claim -- the only claim term I have |
| 09:32 | 6 | is "the first clock signal is independent from the |
| 09:32 | 7 | second clock signal." |
| 09:32 | 8 | And I will hear from defendant on this, |
| 09:32 | 9 | please. |
| 09:32 | 10 | MR. ZEMBEK:  Mr. Green, will you please |
| 09:32 | 11 | go to Slide 3? |
| 09:32 | 12 | Your Honor, I'd like to talk to you about |
| 09:32 | 13 | three distinct disputes this morning.  The first should |
| 09:32 | 14 | be noncontroversial.  Does "the first clock signal is |
| 09:32 | 15 | independent of the second clock signal" require two |
| 09:33 | 16 | different signals, as Redstone previously argued and |
| 09:33 | 17 | again concedes is consistent with the intrinsic record? |
| 09:33 | 18 | We believe that that should be a straightforward |
| 09:33 | 19 | agreement that the parties have reached in principle |
| 09:33 | 20 | that should be reflected in the Court's claim |
| 09:33 | 21 | construction. |
| 09:33 | 22 | The second and the third issue are where |
| 09:33 | 23 | we respectfully disagree with the Court's preliminary |
| 09:33 | 24 | construction.  The first point is can Redstone |
| 09:33 | 25 | recapture claim scope that encompasses two different |

                                                                    4

09:33  1    input signals that depend on a single clock source?  We

09:33  2    believe that the intrinsic record shows that this type

09:33  3    of structure was expressly disclaimed.

09:33  4             And even if not disclaimed, is a claim

09:33  5    scope that encompasses two different input signals each

09:33  6    of which depends on the same clock source, consistent

09:33  7    with the plain and ordinary meaning of a first clock

09:33  8    signal independent of the second clock signal?

09:33  9             When you read that third question, Your

09:33  10   Honor, we think it answers itself.  It doesn't make

09:33  11   sense for there to be a dependency when the first and

09:34  12   second clock signal must be independent of each other.

09:34  13             If we can go to the next slide, please.

09:34  14             Your Honor, this is Slide 4.  And I've

09:34  15   included under Redstone's proposed construction the

09:34  16   construction that was used in the NXP litigation.  In

09:34  17   the NXP litigation, what Redstone stated was "the use

09:34  18   of independent is best understood as simply meaning

09:34  19   different."

09:34  20             We agree that independent does require

09:34  21   two different signals, but we believe it requires more

09:34  22   than just two different signals.

09:34  23             And in the NXP proceeding, there really

09:34  24   was no dispute as to whether or not this independence

09:34  25   requires two signals.  What was argued in that case by

| | | |
|---|---|---|
| 09:34 | 1 | Redstone was the applicant made it clear that the use |
| 09:34 | 2 | of "independent" is best understood as simply meaning |
| 09:34 | 3 | different. |
| 09:34 | 4 | We don't think that simply different is |
| 09:34 | 5 | far enough.  We think it requires more than that.  We |
| 09:35 | 6 | believe it cannot have the same clock reference such |
| 09:35 | 7 | that there is a dependency between the two signals. |
| 09:35 | 8 | In connection with the briefing in this |
| 09:35 | 9 | proceeding, Redstone has not disagreed that the |
| 09:35 | 10 | intrinsic record supports the inclusion of two |
| 09:35 | 11 | different -- two difference clock signals as opposed to |
| 09:35 | 12 | a singular one as we see in the Footnote 3 of their |
| 09:35 | 13 | brief. |
| 09:35 | 14 | With respect to the Court's preliminary |
| 09:35 | 15 | construction, so what we would ask that the Court do |
| 09:35 | 16 | is, one, require that there be two different signals as |
| 09:35 | 17 | supported by the intrinsic record; and, two, remove |
| 09:35 | 18 | this negative limitation that the meaning does not |
| 09:35 | 19 | require the first and second clock signals depend from |
| 09:35 | 20 | different reference oscillator clocks. |
| 09:35 | 21 | We believe that a dependency from |
| 09:35 | 22 | different reference oscillator -- excuse me -- a |
| 09:35 | 23 | dependency from the same reference oscillator clock, |
| 09:35 | 24 | one, was disclaimed and, two, is just not consistent |
| 09:36 | 25 | with the plain and ordinary meaning. |

```
09:36    1                  If we can go to the next slide, please,
09:36    2   Mr. Green.
09:36    3                  The language that we're talking about
09:36    4   here, Your Honor, was added during prosecution through
09:36    5   a methods.  What we have is a first clock signal of a
09:36    6   first phase look loop having a first clock signal as
09:36    7   input.  So we're looking at the first clock signal that
09:36    8   is input to the PLL and that PLL will then generate the
09:36    9   clock signal that would be driving the core.
09:36   10                  And then we have a similar second clock
09:36   11   signal.  And what was said?  That the first clock
09:36   12   signal is independent from the second clock signal.  So
09:36   13   that is where these terms appear in the context of the
09:36   14   claims.
09:36   15                  If we can go to the next slide, please.
09:36   16                  What we have on the Slide 6 is a simple
09:36   17   figure that Dr. Villasenor prepared to help illustrate
09:36   18   the concept of independent and dependent clock signals.
09:36   19                  What Dr. Villasenor explained over ten
09:37   20   pages is what one of ordinary skill would understand to
09:37   21   be the single reference oscillator versus the multiple
09:37   22   reference oscillator.  He explained, using contemporary
09:37   23   documents from the time of the application was filed,
09:37   24   that if you have a single reference oscillator that's
09:37   25   going to be used to generate the clocks for two
```

| | | |
|---|---|---|
| 09:37 | 1 | different components, those signals will be dependent. |
| 09:37 | 2 | So with -- in the context of the claim, |
| 09:37 | 3 | where you see component 1 and component 2 on this |
| 09:37 | 4 | slide, those would be the PLLs.  And those PLLs would |
| 09:37 | 5 | then generate the clock signals that would go into the |
| 09:37 | 6 | cores. |
| 09:37 | 7 | And here, in this simplified example that |
| 09:37 | 8 | Dr. Villasenor prepared, is if there is a change to |
| 09:37 | 9 | this reference oscillator, to this clock source that is |
| 09:37 | 10 | going to the two different PLLs, there's necessarily |
| 09:37 | 11 | going to be a change.  There's a -- these two signals |
| 09:37 | 12 | are not independent.  They both are dependent upon the |
| 09:38 | 13 | exact same reference.  They move up and down as that |
| 09:38 | 14 | frequency oscillator moves up and down. |
| 09:38 | 15 | Can $F_1$ and $F_1$ -- excuse me -- can $F_1$ over |
| 09:38 | 16 | 2 and $F_1$ over 4 change?  Sure.  That could change over |
| 09:38 | 17 | time.  But what's going to happen for the output of |
| 09:38 | 18 | both dividers is it will change as the input changes. |
| 09:38 | 19 | They do not change independently of one another. |
| 09:38 | 20 | What Dr. Villasenor explained one of |
| 09:38 | 21 | ordinary skill in the art would understand is that the |
| 09:38 | 22 | concept of independent clocks would mean that you have |
| 09:38 | 23 | two different reference oscillators, where "reference |
| 09:38 | 24 | oscillators" would be the term that one of ordinary |
| 09:38 | 25 | skill in the art would understood to be the clock |

8

09:38  1    source that would be driving these signals.

09:38  2              If we can go to the next slide, please.

09:38  3              This is the disclosure in the '339

09:38  4    patent.  What we have, as the claim requires, are

09:38  5    multiple different clock signals, clock signal 1, clock

09:39  6    signal 2, each going into a PLL.  What we don't see

09:39  7    here is the sharing of a reference clock.  Instead,

09:39  8    each of them are their own clocks.  And this is what

09:39  9    was relied upon during the prosecution history.

09:39  10             And I think it would be helpful to put

09:39  11   the prosecution history in a little bit more context,

09:39  12   Your Honor.

09:39  13             If we could go to Slide 15, please,

09:39  14   Mr. Green.

09:39  15             So what happened during the prosecution

09:39  16   history?  During the prosecution history, the examiner

09:39  17   rejected the then pending claims in view of Jacobowitz.

09:39  18   The examiner also rejected additional dependent claims

09:39  19   in view of Jacobowitz and Kim.

09:39  20             Like many good patent prosecutors, what

09:39  21   the patent prosecutor did in this case was have a

09:39  22   interview with the examiner.  In the interview with the

09:39  23   examiner, what was discussed?  What was discussed was,

09:40  24   one, the then pending claims; and, two, potentially new

09:40  25   claims; and, three, three different pieces of prior

| 09:40 | 1 | art.  Jacobowitz, Kim, and von Kaenel. |
|---|---|---|

09:40    1    art.  Jacobowitz, Kim, and von Kaenel.

09:40    2         And what was explained?  There were two

09:40    3    different arguments that were advanced in connection

09:40    4    with this office interview, and they're going to be

09:40    5    reflected in greater detail when we look at the

09:40    6    intrinsic record in the form of what was actually

09:40    7    submitted.

09:40    8         But critically, one of the points that

09:40    9    was relied upon -- and we don't know if it was relied

09:40   10    upon in view of a combination or singularly just from

09:40   11    this statement in and of itself, but we do when we look

09:40   12    at the actual written submission -- what was argued?

09:40   13         Applicant's representative referred to

09:40   14    Figure 3 of the specification and stated that clock

09:40   15    signals 1 through 3 were different independent clock

09:40   16    signals input to the PLLs, while Jacobowitz disclosed

09:41   17    using a single reference clock.

09:41   18         So here, we see this concept of a single

09:41   19    reference clock being different from multiple or

09:41   20    independent reference clocks.

09:41   21         If we can go back to Slide 8, please.

09:41   22         What we have on Slide 8 is some of the

09:41   23    multiple different arguments that were advanced during

09:41   24    the prosecution history.

09:41   25         What Redstone wants to focus on is the

09:41  1    first argument, but each of these arguments can give

09:41  2    rise to independent disclaimer grounds.  The second is

09:41  3    the one that we believe is relevant to the concept of

09:41  4    independence.

09:41  5             What was explained?  Well, first, what

09:41  6    was explained is let's look at the first clock signal.

09:41  7    And what does the first clock signal have to be?

09:41  8    Independent from the second clock signal.  So the

09:41  9    applicant made clear, I'm talking about this claim

09:41  10   language that I've added.

09:41  11            And what is the argument advanced

09:42  12   regarding Kim?  Kim discloses an apparatus comprising a

09:42  13   multicore processor having a single clock source, not

09:42  14   multiple clock sources.  The clock source from this

09:42  15   single clock source is then processed, divided,

09:42  16   multiplied, and provided to each of the cores.

09:42  17            So what was contrasted here is the

09:42  18   concept of independence or two different clock signals

09:42  19   when you have a single versus multiple reference

09:42  20   clocks.

09:42  21            And we know that this argument was not

09:42  22   just to Jacobowitz because there were multiple

09:42  23   arguments added in this statement that are going to be

09:42  24   consistent with what we saw from the discussions with

09:42  25   the examiner because after advancing each of these

09:42 1 different arguments what was stated, for at least the

09:42 2 reasons set forth above, Kim fails to cure deficiencies

09:42 3 of Jacobowitz.

09:42 4 So the applicant knew that Kim had a

09:42 5 different clock structure than was being presented in

09:42 6 Jacobowitz, advanced arguments regarding that different

09:42 7 clock structure, and the examiner ultimately accepted

09:43 8 them.

09:43 9 If we can go to the next slide.

09:43 10 Okay. What is this Kim reference that we

09:43 11 keep talking about? Kim has two different types of

09:43 12 clock sources. On the left-hand side, we have a

09:43 13 simpler one. It is a clock source 170 that goes into

09:43 14 PLL 180. And what PLL 180 has is multiple dividers and

09:43 15 multipliers like we saw in my simplified example.

09:43 16 What it then can do is generate different

09:43 17 clock signals 162, 164, 166, and 168, each of which

09:43 18 could then go to a core.

09:43 19 What do we see on the right side? Well,

09:43 20 recall the claim language requires that these different

09:43 21 clock signals, the first and second different clock

09:43 22 signals, have to go into a PLL. And that's exactly

09:43 23 what we have here. We have PLLs 216, 226, 236, and

09:43 24 246.

09:43 25 So what we have are different clock

09:44 1    signals, and what we see from the text is that like we

09:44 2    had for Figure 1, the PLL 260, which generates the

09:44 3    different clock signals, has one or more frequency

09:44 4    dividers so that we have different signals that are

09:44 5    going to be coming out.

09:44 6                    If we can go to the next slide.

09:44 7                    Okay.  This is the argument that we had a

09:44 8    little bit earlier, Your Honor.  What Redstone wants to

09:44 9    focus on is the first part of this argument.

09:44 10                   The first part of the argument is that

09:44 11   Kim fails to disclose or teach a first set of processor

09:44 12   cores and second set of processor cores configured to

09:44 13   dynamically receive a first and a second output signal.

09:44 14                   And what we see here, Your Honor, the

09:44 15   argument that they were making with respect to the

09:44 16   first argument is that there were not groups that were

09:44 17   receiving these different clock signals because there

09:44 18   was in the -- sorry, Your Honor.

09:44 19                   What I've done for this figure is I've

09:45 20   modified the cores to show that each of the cores

09:45 21   receiving from their respective PLL is a set so that

09:45 22   there are two different cores.  So that is the first

09:45 23   argument.

09:45 24                   If we can go to the next slide.

09:45 25                   But that is not the only argument that

| 09:45 | 1 | was made.  And you cannot disregard the arguments that |
| 09:45 | 2 | were made.  There was a clear statement:  In addition, |
| 09:45 | 3 | the first clock signal is independent from the second |
| 09:45 | 4 | clock signal.  The very claim language that we're |
| 09:45 | 5 | talking about here, Your Honor. |
| 09:45 | 6 | And what did the -- what was argued? |
| 09:45 | 7 | That Kim was different because Kim had a single clock |
| 09:45 | 8 | source.  We saw that there were multiple different |
| 09:45 | 9 | clock signals that were going into the PLLs, but they |
| 09:45 | 10 | all shared that single clock source. |
| 09:45 | 11 | What does that mean, sharing the single |
| 09:45 | 12 | clock source?  If we change the output of 270 to make |
| 09:45 | 13 | it go faster or slower, what results from that is a |
| 09:45 | 14 | change to each of the red, yellow, green, and blue |
| 09:46 | 15 | lines that I have below.  So those signals are not |
| 09:46 | 16 | independent.  They share the dependency of this clock |
| 09:46 | 17 | source that is going to be used to feed the cores. |
| 09:46 | 18 | Your Honor, we believe that there is a |
| 09:46 | 19 | clear disclaimer here.  It's tied directly to the claim |
| 09:46 | 20 | language.  It's consistent with what we see in the |
| 09:46 | 21 | specification. |
| 09:46 | 22 | A new argument -- sorry, Your Honor.  Do |
| 09:46 | 23 | you have a question? |
| 09:46 | 24 | THE COURT:  I think you may be about to |
| 09:46 | 25 | say what I was about to ask, which was, would it |

—14—

| | |
|---|---|
| 09:46 | 1 |
| 09:46 | 2 |
| 09:46 | 3 |
| 09:46 | 4 |
| 09:46 | 5 |
| 09:46 | 6 |
| 09:46 | 7 |
| 09:46 | 8 |
| 09:46 | 9 |
| 09:46 | 10 |
| 09:47 | 11 |
| 09:47 | 12 |
| 09:47 | 13 |
| 09:47 | 14 |
| 09:47 | 15 |
| 09:47 | 16 |
| 09:47 | 17 |
| 09:47 | 18 |
| 09:47 | 19 |
| 09:47 | 20 |
| 09:47 | 21 |
| 09:47 | 22 |
| 09:47 | 23 |
| 09:47 | 24 |
| 09:47 | 25 |

make -- my understanding is that the plaintiffs
disagree with your argument on cores and disclaimer.
Would it make sense for them to respond immediately
right now to what you're saying or for me to wait?

        And you may have just been about to say
that -- about their argument.  So however you want to
do it which is best for you, I'm fine with.

        MR. ZEMBEK:  I'm fine with having them
respond to this concept of disclaimer.  Because what
we -- just really quickly, Your Honor, on the next
slide.

        THE COURT:  Sure.

        MR. ZEMBEK:  Your Honor, we know you know
the case law from the Federal Circuit.  But when, as in
here, there are multiple different reasons why the
prior art is distinguishable, precedent instructs that
estoppel attaches to each of the arguments.

        There's a case that is cited -- I believe
it's the Omni case -- in their brief, in which they
characterize the Omni case as rejecting some form of
disclaimer.

        We respectfully believe they misread the
Omni case.  What the Omni case stands for is where
there's a disclaimer, you have to construe it
correctly.

| | | |
|---|---|---|
| 09:47 | 1 | My reading of the Omni case is the |
| 09:47 | 2 | court -- Federal Circuit found yes.  There was a |
| 09:47 | 3 | disclaimer.  But the district court in that particular |
| 09:47 | 4 | case went too far in what the disclaimer actually |
| 09:47 | 5 | required. |
| 09:47 | 6 | If we can go back a slide, Mr. Green. |
| 09:47 | 7 | Here, what we have to do is very simple. |
| 09:47 | 8 | The different clock signals have to have something |
| 09:48 | 9 | other than the single clock source. |
| 09:48 | 10 | I'll let them respond and then address |
| 09:48 | 11 | the rest of their points. |
| 09:48 | 12 | THE COURT:  Okay. |
| 09:48 | 13 | MR. ZEMBEK:  I'm sorry.  It was the Omega |
| 09:48 | 14 | case.  I apologize for talking over you, Josh. |
| 09:48 | 15 | THE COURT:  Okay. |
| 09:48 | 16 | MR. SCHEUFLER:  Thank you, Your Honor. |
| 09:48 | 17 | Josh Scheufler on behalf of Redstone. |
| 09:48 | 18 | Trying to set up my screen share. |
| 09:48 | 19 | And to just get right to your point on |
| 09:48 | 20 | Kim, I'm going to jump to Slide 10. |
| 09:48 | 21 | So jumping straight into Slide 10, here |
| 09:48 | 22 | is what we've been discussing, the actual language that |
| 09:48 | 23 | the applicant used when it was discussing Kim. |
| 09:48 | 24 | It says, in addition to Kim's other |
| 09:49 | 25 | failings, Kim also doesn't disclose the first set of |

| 09:49 | 1 | processor cores and the second set of processor cores |
| 09:49 | 2 | configured to dynamically receive a first output clock |
| 09:49 | 3 | signal of a first PLL having a first clock signal as |
| 09:49 | 4 | input -- that is the clock signal that we're talking |
| 09:49 | 5 | about being independent -- and a second clock signal of |
| 09:49 | 6 | a second PLL having a second clock signal respectively. |
| 09:49 | 7 | So first, it does not have sets of cores |
| 09:49 | 8 | and it does not have the first and second clock signal. |
| 09:49 | 9 | Without having the first and second clock |
| 09:49 | 10 | signal, you can't have a first clock signal that is |
| 09:49 | 11 | independent of a second clock signal.  It does not |
| 09:49 | 12 | exist to be independent of anything. |
| 09:49 | 13 | And so it goes on to explain that:  In |
| 09:49 | 14 | addition, the first clock -- the first clock signal is |
| 09:49 | 15 | independent of the second clock signal.  Also doesn't |
| 09:49 | 16 | have that limitation. |
| 09:49 | 17 | Instead, this is what Kim does.  Kim |
| 09:49 | 18 | discloses its whole apparatus, the apparatus comprising |
| 09:50 | 19 | multicore processor.  Which has a single clock source. |
| 09:50 | 20 | And the clock signal from that single clock source is |
| 09:50 | 21 | then processed and provided to each of the cores. |
| 09:50 | 22 | There are no sets. |
| 09:50 | 23 | So what Qualcomm is asking the Court to |
| 09:50 | 24 | do is to ignore everything I've highlighted and focus |
| 09:50 | 25 | exclusively on the underlined.  If you do that, that's |

09:50  1    obviously not anything that's clear and unambiguous.

09:50  2    It is creating a new argument from what the applicant

09:50  3    actually said.

09:50  4              And I think we can -- we can show how

09:50  5    this -- how there are many, many different

09:50  6    interpretations by looking at the actual figure.

09:50  7              So moving to Slide 11.

09:50  8              Here is Figure 2 of the -- of Kim.

09:50  9              Now, Qualcomm --

09:50  10             (Clarification by Reporter.)

09:50  11             MR. SCHEUFLER:  So Qualcomm would suppose

09:50  12   that instead of a single core 210, single core 220,

09:51  13   230, and 240, these are in fact two cores and thus a

09:51  14   set of cores.

09:51  15             Perhaps an obviousness argument could

09:51  16   have been made there.  It wasn't.  It wasn't brought up

09:51  17   in Qualcomm's briefing so I don't have full support to

09:51  18   explain why that wouldn't have been obvious.  But

09:51  19   that's only one possible explanation for what the

09:51  20   examiner or the applicant was thinking.

09:51  21             Another explanation is, well, what is the

09:51  22   set of processor cores?  Well, it's all of the cores.

09:51  23   They're all receiving from one PLL, that being 260.

09:51  24             And so if we look at this, well, we can

09:51  25   find our first clock signal is input, that's 272.

|       |    |                                                                         |
|-------|----|-------------------------------------------------------------------------|
| 09:51 | 1  | There is no second clock signal that is input so                        |
| 09:51 | 2  | there's nothing for it to be independent of, so that                    |
| 09:51 | 3  | limitation is also not met.                                             |
| 09:51 | 4  | Now, another alternative would be to                                    |
| 09:51 | 5  | divide this in half. And set up the left-hand cores as                  |
| 09:51 | 6  | the first set of processor cores and the right-hand as                  |
| 09:51 | 7  | the second set of processor cores and then divide PLL                   |
| 09:52 | 8  | 260 in half and have 260 sub A and 260 sub B so that                    |
| 09:52 | 9  | you would have a PLL for each of these sets.                            |
| 09:52 | 10 | But then what is the input clock signal?                                |
| 09:52 | 11 | Well, the input clock signal for both is                                |
| 09:52 | 12 | 272. And one signal, a single signal is not                             |
| 09:52 | 13 | independent of itself. And so a single clock source                     |
| 09:52 | 14 | with a single clock signal, that doesn't give you a                     |
| 09:52 | 15 | first clock signal that is independent of the second                    |
| 09:52 | 16 | clock signal.                                                           |
| 09:52 | 17 | At the very least, there is no clear                                    |
| 09:52 | 18 | disavowal here. And that's what's required for                          |
| 09:52 | 19 | disclaimer -- clear and unambiguous disclaimer. And                     |
| 09:52 | 20 | with three potential different obviousness arguments                    |
| 09:52 | 21 | applied to Kim and only one yields what Qualcomm would                  |
| 09:52 | 22 | like, I don't believe they can win the day on that.                     |
| 09:52 | 23 | THE COURT: Back to you, Mr. Zembek.                                      |
| 09:53 | 24 | (Clarification by Reporter.)                                            |
| 09:53 | 25 | MR. ZEMBEK: If you go back to Slide 10,                                  |

| 09:53 | 1  | please, Mr. Green. |
| 09:53 | 2  | Your Honor, there are two different |
| 09:53 | 3  | arguments here. And each argument is tied to express |
| 09:53 | 4  | claim language. The first claim language is what |
| 09:53 | 5  | counsel just discussed. That is the sets of cores. |
| 09:53 | 6  | If we can go to the next slide, |
| 09:53 | 7  | Mr. Green. |
| 09:53 | 8  | The second argument is what we have |
| 09:53 | 9  | focused on. Again, it's tied directly to the claim |
| 09:53 | 10 | language that was added. |
| 09:54 | 11 | And what is said about this claim |
| 09:54 | 12 | language? It's different from what Kim has because Kim |
| 09:54 | 13 | has a single clock source. |
| 09:54 | 14 | Federal Circuit case law is clear. When |
| 09:54 | 15 | there are two different arguments that have been made, |
| 09:54 | 16 | each can give rise to disclaimer. The first argument |
| 09:54 | 17 | is to the concept of the cores and the grouping of the |
| 09:54 | 18 | cores. The second argument is with respect to the |
| 09:54 | 19 | first clock signal independent from the second clock |
| 09:54 | 20 | signal. |
| 09:54 | 21 | So you can't just wipe this argument out. |
| 09:54 | 22 | The question is not whether Kim or whether Jacobowitz |
| 09:54 | 23 | anticipated rendered obvious. What we're looking at |
| 09:54 | 24 | here, Your Honor, is the express arguments that were |
| 09:54 | 25 | added in the context of the claim language that was |

| 09:54 | 1 | added, and we believe that this is a very clear |
| 09:54 | 2 | disavowal of claim scope. |
| 09:54 | 3 | THE COURT: And is that your whole |
| 09:54 | 4 | argument? I mean, because I kind of moved over to |
| 09:54 | 5 | core. If there's anything else you wanted to argue, |
| 09:55 | 6 | I'm happy to hear that as well. |
| 09:55 | 7 | MR. ZEMBEK: Yeah. I would also like to |
| 09:55 | 8 | address plain and ordinary meaning, Your Honor. |
| 09:55 | 9 | THE COURT: Sure. Of course. |
| 09:55 | 10 | MR. ZEMBEK: If we can go forward to |
| 09:55 | 11 | Slide 13. |
| 09:55 | 12 | Your Honor, the third point that I |
| 09:55 | 13 | mentioned that I wanted to talk about, the way that I |
| 09:55 | 14 | phrased it was even if not disclaimed, which we think |
| 09:55 | 15 | it clearly has been, is a claim that encompasses two |
| 09:55 | 16 | different input signals each of which depends on the |
| 09:55 | 17 | same clock source consistent with the plain and |
| 09:55 | 18 | ordinary meaning of a first clock signal independent of |
| 09:55 | 19 | the second clock signal. |
| 09:55 | 20 | When you look at the -- that question |
| 09:55 | 21 | that we've put forward to you, whether when they share |
| 09:55 | 22 | the same reference, they go up and down as a function |
| 09:55 | 23 | of the same reference, we think it answers itself that |
| 09:55 | 24 | the plain and ordinary meaning would also be |
| 09:55 | 25 | inconsistent with the coverage of two different signals |

```
09:55    1   sharing the same reference.

09:55    2                   There was criticism of Dr. Villasenor's

09:56    3   cursory analysis.  Well, they have to call it a cursory

09:56    4   analysis because they have no expert opinion of their

09:56    5   own.  What Dr. Villasenor presented over ten different

09:56    6   pages is what one of ordinary skill would understand.

09:56    7                   And of course, the Court can consult with

09:56    8   those extrinsic references because they confirm what

09:56    9   the plain and ordinary meaning is.  And that plain and

09:56   10   ordinary meaning was repeatedly urged during the

09:56   11   prosecution history.  With respect to Kim, there was --

09:56   12                   THE COURT:  Mr. Zembek, when -- and maybe

09:56   13   a difference about meaning.  But every time so far I've

09:56   14   heard you make a plain and ordinary meaning argument,

09:56   15   eventually you have swerved into what they did during

09:56   16   file history and -- which I get completely in your

09:56   17   other argument and which I think is -- it might be

09:56   18   compelling.

09:57   19                   But I haven't heard you yet stick with

09:57   20   plain and ordinary meaning where you haven't said,

09:57   21   okay.  Look what they told the Patent Office.  Or --

09:57   22   and so to me that -- it makes me less concerned with

09:57   23   the plain and ordinary meaning decision and tells me

09:57   24   maybe I need to just focus on your other argument.

09:57   25                   Unless you have an argument that is
```

09:57  1    independent of what was done during the examination.

09:57  2                    MR. ZEMBEK:  What my argument would be

09:57  3    that is independent of what was done during examination

09:57  4    is going to be pointing the Court's attention to the

09:57  5    Personalized Media case.

       6                    THE COURT:  Okay.

09:57  7                    MR. ZEMBEK:  Because the Personalized

09:57  8    Media case is a situation which we have here, there

09:57  9    were multiple statements.  We believe that they went to

09:57  10   the level of disavowal.  Obviously the other side

09:57  11   disagrees.  But we think that did go to the level of

09:57  12   disavowal.

09:57  13                   But they still informed the claim

09:58  14   construction.  And those repeated statements,

09:58  15   consistent with what we view the plain and ordinary

09:58  16   meaning to be, what Dr. Villasenor explained the plain

09:58  17   and ordinary meaning to be, would mean that it's a

09:58  18   situation in which this particular claim construction

09:58  19   dispute would be different signals that do not depend

09:58  20   from the same reference clock.

09:58  21                   I mean, we believe that that's the plain

09:58  22   and ordinary meaning and it's consistent with the

09:58  23   disclaimer.

09:58  24                   So we think, Your Honor, we're putting

09:58  25   you in a position that you can do disclaimer and you

—23—

| | | |
|---|---|---|
| 09:58 | 1 | can do plain and ordinary meaning, so you've got two |
| 09:58 | 2 | different reasons why this construction should be |
| 09:58 | 3 | affirmed if we ever have to go to the Federal Circuit. |
| 09:58 | 4 | THE COURT:  Got it.  Okay.  I'll be back |
| 09:58 | 5 | in a second. |
| 09:58 | 6 | (Pause in proceedings.) |
| 10:00 | 7 | THE COURT:  I feel certain that your |
| 10:00 | 8 | summer clerks are all going to give you five stars on |
| 10:00 | 9 | Yelp when they -- when they're interviewed. |
| 10:00 | 10 | I will tell them, since they haven't |
| 10:00 | 11 | gotten to hear me say this, that -- even though all of |
| 10:00 | 12 | you have.  The reason I like handling patent cases is |
| 10:00 | 13 | because the quality of the lawyers is always |
| 10:00 | 14 | exceptional in these hearings. |
| 10:00 | 15 | I'm going to maintain the preliminary |
| 10:00 | 16 | construction in the case on this one claim term. |
| 10:00 | 17 | Is there anything else that we need to |
| 10:00 | 18 | take up? |
| 10:00 | 19 | MR. ZEMBEK:  Your Honor, with respect to |
| 10:00 | 20 | the preliminary construction, because we don't believe |
| 10:00 | 21 | that there's a dispute that the signals have to be |
| 10:00 | 22 | different, we would propose that that be added to the |
| 10:00 | 23 | preliminary construction. |
| 10:00 | 24 | THE COURT:  And from plaintiff? |
| 10:00 | 25 | MR. SCHEUFLER:  Well, Your Honor, we |

-24-

| | | |
|---|---|---|
| 10:00 | 1 | don't disagree that the terms have to be different.  We |
| 10:01 | 2 | believe that that's well captured by the plain meaning |
| 10:01 | 3 | of "independent" and to add it in would only invite |
| 10:01 | 4 | confusion.  So we would oppose it on that ground. |
| 10:01 | 5 | THE COURT:  Mr. Zembek, I'll do this for |
| 10:01 | 6 | you, because I understand why you would be more |
| 10:01 | 7 | comfortable with that. |
| 10:01 | 8 | If -- I don't think it needs to be added, |
| 10:01 | 9 | but if when -- Mr. Zembek, when you receive the |
| 10:01 | 10 | plaintiff's expert report, if you think that they are |
| 10:01 | 11 | not abiding by what you say would be an agreement in |
| 10:01 | 12 | terms of the way their infringement expert handles the |
| 10:01 | 13 | infringement opinion, come back and let us know, and |
| 10:01 | 14 | I'll decide whether or not it's something that I do |
| 10:01 | 15 | have to impose with respect to the claim term. |
| 10:01 | 16 | MR. ZEMBEK:  Thank you, Your Honor. |
| 10:01 | 17 | I think that we do have an agreement that |
| 10:01 | 18 | the first and second input signals are different |
| 10:01 | 19 | signals.  They're not the same signal. |
| 10:01 | 20 | THE COURT:  That was the way I read it in |
| 10:01 | 21 | the claim.  Yes. |
| 10:01 | 22 | MR. ZEMBEK:  All right.  Thank you, Your |
| 10:01 | 23 | Honor. |
| 10:01 | 24 | THE COURT:  Anything else? |
| 10:02 | 25 | MR. SCHEUFLER:  None from plaintiff, Your |

10:02  1   Honor.

10:02  2            THE COURT:  Okay.  Thank you all for

10:02  3   being here and good luck to the summer associates.

10:02  4   Take care.

10:02  5            (Hearing adjourned.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   UNITED STATES DISTRICT COURT )

2   WESTERN DISTRICT OF TEXAS     )

3

4

5              I, Kristie M. Davis, Official Court

6   Reporter for the United States District Court, Western

7   District of Texas, do certify that the foregoing is a

8   correct transcript from the record of proceedings in

9   the above-entitled matter.

10             I certify that the transcript fees and

11  format comply with those prescribed by the Court and

12  Judicial Conference of the United States.

13             Certified to by me this 13th day of June

14  2025.

15

16                      */s/ Kristie M. Davis*
                        KRISTIE M. DAVIS
17                      Official Court Reporter
                        PO Box 20994
18                      Waco, Texas 76702
                        (254) 666-0904
19                      kmdaviscsr@yahoo.com

20

21

22

23

24

25

10:02