**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| REDSTONE LOGICS LLC, | |
| *Plaintiff*, | Case No. 7:25-CV-00182-DC-DTG |
| v. | |
| ADVANCED MICRO DEVICES, INC., | |
| *Defendant*. | |

**DEFENDANT ADVANCED MICRO DEVICES, INC.'S
OPENING CLAIM CONSTRUCTION BRIEF**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND ....................................................................................................... 1

     A.    The Specification ......................................................................................... 1

     B.    Prosecution History ...................................................................................... 2

III.    LEVEL OF ORDINARY SKILL IN THE ART ................................................... 3

IV.     AGREED UPON TERMS ....................................................................................... 3

V.      TERMS WHERE THE PARTIES HAVE MOVED TO ADOPT PRIOR
     BRIEFING AND REQUEST THE COURT ISSUE CORRESPONDING ORDER ........ 4

VI.     DISPUTED TERMS ................................................................................................ 4

     A.    "the first clock signal is independent from the second clock signal" .................... 4

VII.    CONCLUSION ........................................................................................................ 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amgen Inc. v. Coherus BioSciences Inc.*,
   931 F.3d 1154 (Fed. Cir. 2019)................................................................................................4

*Aylus Networks, Inc. v. Apple Inc.*,
   856 F.3d 1353 (Fed. Cir. 2017)................................................................................................3

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
   713 F.3d 1090 (Fed. Cir. 2013)..............................................................................................10

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*,
   222 F.3d 951 (Fed. Cir. 2000)................................................................................................11

*MediaTek, Inc. et al v. Redstone Logics LLC*,
   IPR2025-00085 ......................................................................................................................3, 9

*Medrad, Inc. v. MRI Devices Corp.*,
   401 F.3d 1313 (Fed. Cir. 2005)................................................................................................4

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)...........................................................................................4, 11

*Saffran v. Johnson & Johnson*,
   712 F.3d 549 (Fed. Cir. 2013)..............................................................................................8, 11

*Tech. Props. Ltd. LLC v. Huawei Techs. Co.*,
   849 F.3d 1349 (Fed. Cir. 2017)................................................................................................5

**Other Authorities**

New Oxford American Dictionary................................................................................................12

Oxford English Dictionary............................................................................................................12

### TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | US 8549339 B2 ('339 Patent) |
| 2 | 12713220 File History ('339 Patent File History) |
| 3 | US 2009/0106576A (Jacobowitz) |
| 4 | US 2009/0138737 A1 (Kim) |
| 5 | The Oxford English Dictionary, 2nd Edition |
| 6 | New Oxford English Dictionary, 3rd Edition |
| 7 | US 2010/0122101 A1 (Naffziger) |
| 8 | *MediaTek, Inc. et al. v. Redstone Logics LLC*, IPR2025-0008, Paper 6 (Patent Owner's Preliminary Response) |

## I.    INTRODUCTION

Only the term "the first clock signal is independent from the second clock signal" in independent claims 1 and 21 needs resolution.[1] The parties disagree whether this term requires that the first and second clock signals are provided by different clock sources. As explained below, the specification and prosecution history make clear that it does. The Court should adopt Advanced Micro Devices, Inc.'s ("AMD") construction for this term which is consistent with the intrinsic record.

## II.    BACKGROUND

### A.    The Specification

The '339 patent describes, in relevant part, a multi-core processor with a first set of processor cores that receives a first clock signal and a second set of cores that receives a second clock signal. Ex. 1 ('399 patent), Abstract, 1:612:40. According to the '339 patent, this configuration differs from prior art multi-core processors where "the same supply voltage and clock signal" is provided to each core. *Id.* at 1:7-14. The '339 patent also depicts this allegedly novel multi-core processor clocking design in Figure 3, which shows three separate clock signals, (i.e., "clock signal 1", "clock signal 2", and "clock signal 3" being supplied to different phase locked loops ("PLLs") (i.e., PLL 1, PLL 2, and PLL 3 respectively). *Id.* at 4:1-17, Fig. 3. The PLLs in turn provide a clocking signal to a separate set of cores (shown as cores 152, 154, and 156, respectively). *Id.*

---

[1] As further set forth in the Joint Motion for Partial Entry of Prior Claim Construction, the parties have agreed—subject to and conditioned upon the Court's leave—to adopt the briefing and issue the same corresponding order regarding the claim construction dispute of dependent claims 5 and 14, as if such briefing and order had occurred in this case. *See* Dkt. 25 (Joint Motion for Partial Entry of Prior Claim Construction).



Consistent with Figure 3, both asserted independent claims (1 and 21) of the '339 patent recite "a first phase lock loop (PLL) having a first clock signal as input" and "a second PLL having a second clock signal as input" wherein "the first clock signal is independent from the second clock signal."

### B.    Prosecution History

During prosecution, the examiner rejected the '339 patent's then-pending claims in view of two references, Jacobowitz and Kim. Jacobowitz and Kim each disclosed multiple clock signals produced by a single source (i.e., a reference oscillator). *See* discussion of prosecution history *infra* Section VI.A.1. In response to the examiner's rejections based on that art, the applicant added the "independent" clock signals limitation to the claims and argued that Jacobowitz and Kim failed to disclose the claims as amended because those references have only one clock source that supplied multiple clock signals.

2

And, in a Patent Owner Preliminary Response,[2] Redstone made clear that the same limitation requiring independent clock signals requires different clock sources when distinguishing US 2010/0122101 ("Naffziger"). Ex. 8 ("Patent Owner's Preliminary Response") *MediaTek, Inc. et al v. Redstone Logics LLC,* IPR2025-00085, Paper 6 at 23 (Feb. 5, 2025) (arguing that the Petition should be denied because it fails to show "a *separate, independent* external clock signal" as required by the claims).

## III.    LEVEL OF ORDINARY SKILL IN THE ART

A person of ordinary skill in the art ("POSITA") at the time of the alleged invention would have had at least a bachelor's degree in electrical engineering, computer engineering, computer science, or a similar field, as well as at least two years of academic or industry experience designing or analyzing electronic circuits, semiconductors, processors, or power management, and related firmware and software, or the equivalent. A POSITA with a higher level of education may have fewer years of academic or industry experience, or vice versa.

## IV.    AGREED UPON TERMS

The parties have agreed on the following construction.

| Claim(s) | Term | Agreed Construction |
|---|---|---|
| 1, 21 | "set of processor cores" | "group of two or more processor cores" |

---

[2] Statements made during IPR are intrinsic evidence and "promote[] the public notice function" of it. *Aylus Networks, Inc. v. Apple Inc.,* 856 F.3d 1353, 1360 (Fed. Cir. 2017). Further, "prosecution disclaimer can apply to statements made by a patent owner in a preliminary response to an IPR." *Id.* at 1362.

## V.    TERMS WHERE THE PARTIES HAVE MOVED TO ADOPT PRIOR BRIEFING AND REQUEST THE COURT ISSUE CORRESPONDING ORDER[3]

| Claim(s) | Term | Prior Construction |
|---|---|---|
| 5 | "located in a periphery of the multi-core processor" | Not indefinite. Plain-and-ordinary meaning. |
| 14 | "Located in a common region of the first set of processor cores and the second set of processor cores" | Indefinite |

## VI.    DISPUTED TERMS

### A.    "the first clock signal is independent from the second clock signal"

| Claim(s) | Redstone's Proposal | AMD's Proposal |
|---|---|---|
| 1, 21 | Plain and ordinary meaning | "the first and second clock signals are generated from different clock sources" |

For this limitation, the intrinsic record shows that "independent" clock signals must originate from different clock sources. AMD's proposed construction tracks a POSITA's understanding of the plain and ordinary meaning of the limitation based on the intrinsic evidence. In particular, the applicant's statements to overcome prior art during prosecution support AMD's position. Those statements clearly disclaimed any broader interpretation of the claim limitation. For these reasons, AMD's proposed construction is correct and should be adopted.

### 1.    The intrinsic evidence shows that "independent" limitation requires clock signals that depend from different clock sources

Claim terms "are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (citation omitted). Determining that meaning requires examining the context provided by the "written

---

[3] *See* footnote 1.

description and the prosecution history." *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) (citation omitted). The public is entitled to rely on all grounds raised to distinguish claimed subject matter over the prior art. *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1159-60 (Fed. Cir. 2019) ("So while Amgen did assert multiple reasons for why Holtz is distinguishable, our precedent instructs that estoppel can attach to each argument."). That includes distinctions or arguments that might, in hindsight, have been unnecessary. *Tech. Props. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1359 (Fed. Cir. 2017) ("[T]he scope of surrender is not limited to what is absolutely necessary to avoid a prior art reference; patentees may surrender more than necessary.").

Here, the intrinsic record supports provides that each clock signal depends from different, independent sources. The patent describes that a set of cores "may be associated with an . . . ***independent clock domain*** defined by a clock signal."[4] Ex. 1 ('339 Patent), at 2:26-31. Annotated Figure 3 below illustrates three separate clock signals (1, 2, 3) provided to three separate PLLs (1, 2, 3) that send output clock signals to three separate cores (152, 154, 156). *Id.* at 4:4-10. Multiple clock sources provide independent, separate clock signals to the separate PLLs.

---

[4] All emphases added unless otherwise noted.

5



The prosecution history confirms that the claimed "independent" clock signals require different clock sources. During prosecution, the examiner originally rejected the application claims that later issued as independent claims 1 and 21 based on Jacobowitz (U.S. Pat. Pub. No. 2009/0106576). Ex. 2 ('339 patent file history), at 92-94 (Aug. 29, 2012 Non-Final Office Action). Jacobowitz discloses a multi-core processor that distributes from a single clock source "clock frequency ($v_R$) [orange] to each local oscillator 108 [digitally controlled clock generator, also orange]," as shown in annotated Figure 6 from Jacobowitz below. Ex. 3 (Jacobowitz) ¶¶ 25, 38. Each of those "local oscillator 108" is derived from a single reference oscillator. *Id.* ¶¶ 26, 38



FIG. 6

To overcome a rejection, the applicant explicitly distinguished the claimed "independent clock signals" from Jacobowitz's single clock source. In an examiner interview, the applicant argued that in Figure 3 of the '339 patent, "clock signals 1 through 3 were different/***independent*** clock signals input to the PLLs while Jacobowitz disclosed using a ***single reference clock***." Ex. 2, at 124 (Nov. 27, 2012 Applicant-Initiated Interview Summary). The applicant promised to submit narrowing claim amendments to incorporate that distinction. *Id.* This statement confirms that ***multiple*** "different clock sources" are required to generate the claimed "independent" clock signals. Importantly, the examiner's focus on the clock itself rather than the signals is a key distinction. The examiner agreed with the applicant's assertion but determined that the as-filed claims were broad enough to encompass Jacobowitz's single clock source approach. *Id.* Two days later, the applicant amended the claims to add that "the first clock signal is independent from the second clock signal." *Id.* at 109, 112-113 (Nov. 29, 2012 Amendments to Claims 1 and 21, respectively). The relevant part of this amendment is reproduced below.

> . . . a first output clock signal of a first phase lock loop (PLL) having a first clock signal as input;

7

> . . . a second output clock signal of a second PLL having a second clock signal as input, wherein the first supply voltage is independent from the second supply voltage, and <u>the first clock signal is independent from the second clock signal</u> . . . .

*Id.* at 109 (underline in original).

The applicant then argued that Jacobowitz did not teach the claimed "independent" clock signals because "FIG. 6 and all other figures of Jacobowitz clearly show that the microprocessor chip (e.g., 600) receives a system reference oscillator clock frequency (vR) and distributes vR to local oscillators 108." *Id.* at 115 (Nov. 29, 2012 Applicant Arguments). Further, the single reference oscillator approach of Jacobowitz failed to show (i) PLLs arranged as claimed (Jacobowitz discloses local oscillators) and (ii) "[i]n addition, the first clock signal is independent from the second clock signal, as required in the amended independent claims 1 and 21." *Id.* at 116.

The applicant's statement to the examiner makes clear that different clock sources are required to generate "independent" clock signals. Thus, contrary to the analysis in *Qualcomm*, Dkt. 43 at 19, the applicant distinguished Jacobowitz for having a single clock source. Indeed, the applicant amended the claim to avoid Jacobowitz's single clock source design by injecting the "independent" clock signals limitations. Even if there was another basis for distinction, disclaimer still applies to the "independent" clock signal distinction, as "[a]n applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well." *See Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013) (citation omitted).

The applicant's admissions about the scope of the "independent" clock signals limitation did not end there. The applicant was also forced to grapple with the examiner's rejections based on Kim (U.S. Pat. Pub. No. 2009/0138737). Ex. 2, at 94-97 (Aug. 29, 2012 Non-Final Office

8

Action). Kim describes a single clock source that provides a signal that is divided and distributed to multiple PLLs. Ex. 4 (Kim), at Abstract. As shown below in annotated Figure 2 from Kim, clock source 270 (orange) sends a signal to main PLL 260 (also orange), which divides that signal and provides inputs (orange arrows) to each of PLL1 through PLL4. *Id.*

Redstone agrees that the first and second independent clock signals have to be different but disputes that the signals originate from different sources. Yet, there was explicit disclaimer of a single clock source. Redstone cannot walk away from the clear statements made in the prosecution history, namely that Kim "fails to disclose or teach . . . a first clock signal is independent from the second clock signal" because "*[i]nstead, Kim* discloses . . . a ***single clock source*** (i.e., 170 in FIG. 1 or 270 in FIG. 2)." Ex. 2, at 116-117 (Nov. 29, 2012 Applicant Arguments). The applicant's use of "instead" establishes that clock signals that originate from a single source are outside the scope of the limitation. If a "single clock source" cannot provide "independent" clock signals, "different clock sources" are required, as proposed in AMD's construction.



FIG. 2

The intrinsic evidence establishes that "independent" clock signals require multiple reference clock sources. A POSITA reading the specification and prosecution history would understand this claim term requires that the first and second clock signals depend from different reference clock sources, as reflected in AMD's proposed construction.

The additional prosecution history developed during the IPR proceedings also confirms that the claimed "independent" clock signals require different clock sources. During *MediaTek, Inc. et al v. Redstone Logics LLC,* IPR2025-00085, Redstone admitted as much in its Patent Owner Preliminary response when discussing US 2010/0122101 ("Naffziger"). Specifically, Naffziger discloses Power Control Unit 150, receives an external clock signal (clk_ext in purple in the annotated Fig. 5 below) that supplies separate core clock signals (clk_core_1 in purple and clk_core_2 in green in the annotated Fig. 5). Ex. 7 ("Naffziger"), at [0022], [0055].



Fig. 5

In distinguishing this prior art, and stating that Petitioner failed to show "any clock signal is 'independent,'" Redstone agreed that a separate independent, external clock signal is required

stating that "[t]he express teaching of Naffziger is a single external clock signal supplied to a single Power Control Unit and then processed to provide clock signals to the core." Ex. 8, at 22. Redstone went further, acknowledging noting that there is no second power control unit and, importantly, no basis to supply any duplicated power control unit with "a *separate, independent* external clock signal." Ex. 8, at 23.

The circumstances here meet the standard for prosecution-based disclaimer. The applicant's statements during prosecution of the '339 patent clearly and unmistakably surrendered claim scope. The statements are not ambiguous to a POSITA. "[W]hen the patentee unequivocally and unambiguously disavows a certain meaning to obtain a patent," that disavowal limits the meaning of the claim term. *See Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013). Redstone is bound by the applicant's disavowal. *See, e.g.*, *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 956-57 (Fed. Cir. 2000) (finding disavowal based on inventor's statements during prosecution even though the patent had been assigned to another entity).

In the *Qualcomm* case, the Court concluded there was no disclaimer relating to the applicant's statements about Kim. AMD respectfully disagrees. The Court noted that Kim allegedly fails to disclose providing first and second clocks signals to separate sets of cores. *Qualcomm*, Dkt. 43 at 15-17. But while the applicant argued that Kim fails to disclose the claimed first and second signals, it ***separately distinguished*** Kim as lacking "<u>independent</u>" clock signals. As stated earlier, the fact that an applicant distinguished prior art on multiple points does not mean disclaimer can apply to those multiple points. *See Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013) (citation omitted). Here, the applicant explained in no uncertain

1626993720

terms that "[i]nstead" of "independent" clock signals, Kim discloses a multicore processor "having a single clock source." Ex. 2, at 116.

The Court suggested that the applicant may have understood Kim to disclose a single clock signal and, for that reason, lacked "independent" clock signals. *Qualcomm*, Dkt. 43 at 17-19. But the applicant expressly noted that the only reason why the reference's clock signals are not *independent* is Kim's "single source clock". The Court also states that the applicant did not distinguish Jacobowitz for having a single clock source, which indicates there was no disclaimer. *Qualcomm*, Dkt. 43 at 19. As described above, however, the applicant expressly distinguished Jacobowitz's single clock source from the claimed "independent" clock signals.

### 2. Extrinsic evidence also supports AMD's proposed construction

Extrinsic evidence is helpful to determining "what a person of ordinary skill in the art would understand claim terms to mean." *Phillips*, 415 F.3d at 1317-19. Here, dictionary definitions support that a POSITA would have understood "independent" clock signals as separate and not depending from the same source. Ex. 5 (The Oxford English Dictionary) (defining "independent" as "[n]ot depending upon another for its value"); Ex. 6 (New Oxford American Dictionary) ("independent" means "separate"). AMD's proposed construction is consistent with these definitions.

## VII. CONCLUSION

AMD respectfully requests that the Court adopt its proposed construction for the "independent" limitation.

Dated: January 21, 2026                     Respectfully submitted,

                                            */s/ Jennifer Librach Nall*
                                            Jennifer Librach Nall
                                            Texas Bar No. 24061613
                                            Michael Saulnier
                                            Texas Bar No. 24131647
                                            DLA PIPER LLP (US)
                                            303 Colorado, Suite 3000
                                            Austin, TX  78701
                                            Tel: 512.457.7125
                                            Fax: 512.457.7001
                                            jennifer.nall@us.dlapiper.com
                                            michael.saulnier@us.dlapiper.com

                                            Daniel Valencia
                                            DLA PIPER LLP (US)
                                            500 Eighth Street, NW
                                            Washington, DC 20004
                                            Tel: 202.799.4000
                                            Fax: 202.799.5000
                                            daniel.valencia@us.dlapiper.com

                                            Chris M. Katsantonis
                                            DLA PIPER LLP (US)
                                            444 West Lake Street, Ste 900
                                            Chicago, IL 60606
                                            Tel: 312-368-2127
                                            Fax: 312-251-5727
                                            Email: chris.katsantonis@us.dlapiper.com

                                            **ATTORNEYS FOR DEFENDANT
                                            ADVANCED MICRO DEVICES, INC.**

1626993720

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been filed on January 21, 2026 and made available to all counsel of record via the Court's CM/ECF system.

*/s/ Jennifer Librach Nall*
Jennifer Librach Nall

14

1626993720