**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| REDSTONE LOGICS LLC,<br><br>   Plaintiff,<br> v.<br><br>ADVANCED MICRO DEVICES, INC.<br><br>   Defendant. | Case No.  7:25-cv-000182-DC-DTG |

**<u>PLAINTIFF'S RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>**

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................ 1

II. DISPUTED TERMS REQUIRING CONSTRUCTION ......................................................... 1

    a.  Term 1: "the first clock signal is independent from the second clock signal" ............... 1

III. CONCLUSION .................................................................................................................. 8

## TABLE OF AUTHORITIES

**Cases**

*Thorner v. Sony Computer Ent. Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) .................................................................................................. 5

## I. INTRODUCTION

U.S. Patent No. 8,549,339 (Dkt. No. 1-1; the "'339 Patent") teaches an innovative multi-core processor with sets of processor cores. In particular, the '339 Patent teaches various means of coordinating not just the individual cores of the multi-core processor but the sets of processor cores that operate as a unit. *See* '339 Patent at 2:61-3:15. While previous techniques focused on coordination among individual cores, the '339 Patent focuses on coordination as to sets of cores. AMD's proposed construction ignores these sets, the broader architecture, and the applicant's use of "signal" rather than "source." Here, the disputed claim language is clear in its own right. No construction is needed and the term should be given its plain and ordinary meaning.

## II. DISPUTED TERMS REQUIRING CONSTRUCTION

### a. Term 1: "the first clock signal is independent from the second clock signal"

| '339 Patent Claims | Redstone's Proposed Construction | AMD's Proposed Construction |
|---|---|---|
| Claims 1, 21 | Plain and ordinary meaning | "the first and second clock signals are generated from different clock sources" |

This term is simple and clear on its face, a first signal that does not depend on a particular second signal. But AMD asks to Court to consider not these signals, but to consider "sources." Indeed, one could simply replace "first clock signal" and "second clock signal" with "first clock source" and "second clock source" and delete the independent limitation entirely and have the same impact as AMD's construction. But this is not the language the applicant claimed, nor did it act as a lexicographer or disclaim any scope to reach anything similar. Rather, the term should be given its plain meaning, not limited to "different clock sources."

1

The plain meaning is clear and when the prosecution history around the relevant amendment is considered there is no special meaning. During prosecution, the Examiner initial rejected the independent claims as anticipated by Jacobowitz. Dkt. 26-3, Exhibit 2 ("Prosecution History") at 91-94. In an Examiner Interview, the Applicant argued that Jacobowitz did not include a first and second clock signal because it offered only a single clock signal provided to both local oscillators/PLLs disclosed by Jacobowitz, not two "different/independent clock signals" as shown in Figure 3 of the patent. *See id*. at 124. The Examiner agreed that Jacobowitz and Figure 3 were different but disagreed as to Jacobowitz disclosing the first and second clock signal. *Id*. The Examiner explained because, under the broadest reasonable interpretation, the then-current claim language, that included no mention of any PLLs, could read not just on the signal input into Jacobowitz's local oscillators/PLLs but "also reads on the output of the PLLs shown in applicant's figure 3." *Id*. In effect, the Examiner found that the output of a single oscillator as in Jacobowitz once processed through two different local oscillators/PLLs could be "different/independent" as the Applicant suggested would distinguish Jacobowitz. With this understanding of Jacobowitz and the claims, the Applicant amended the independent claims to distinguish the input and output of the PLLs and specify that the inputs of the two PLLs must be independent:

| Original Claim Language | Amended Language |
|---|---|
| 1: A multi-core processor, comprising:<br>A first set of processor cores of the multi-core processor, wherein each dynamically receive a first supply voltage and a first clock signal;<br>A second set of processor cores of the multi-core processor, wherein each processor core form the second set of processor cores is configured to dynamically receive a second supply voltage and a second clock signal; and | 1: A multi-core processor, comprising:<br>A first set of processor cores of the multi-core processor, wherein each processor core from the first set of processor cores is configured to dynamically receive a first supply voltage and a first ==output clock signal of a first phase lock loop (PLL) having a first clock signal as input==;<br>A second set of processor cores of the multi-core processor, wherein each processor core from the second set of processor |

2

| | |
|---|---|
| An interface block coupled to the first set of processor cores and also coupled to the second set of processor cores, wherein the interface block is configured to facilitate communication between the first set of processor cores and the second set of processor cores. | cores is configured to dynamically receive a second supply voltage and a second output clock signal of a second PLL having a second clock signal as input, wherein the first supply voltage is independent from the second supply voltage, and the first clock signal is independent from the second clock signal; and |
| | An interface block coupled to the first set of processor cores and also coupled to the second set of processor cores, wherein the interface block is configured to facilitate communication between the first set of processor cores and the second set of processor cores. |

Prosecution History at 109.

The new claims did not read on Jacobowitz even under the broadest reasonable interpretation. The applicant explained Jacobowitz fails to teach "a first output clock signal of a first PLL having a first clock signal as input and a second output clock signal of a second PLL having a second clock signal as input" or "the first clock signal is independent form the second clock signal," because Jacobowitz merely distributes a single signal, $V_R$, to the local oscillators. *Id*. at 115-16. The first and second clock signals cannot be the same signal as one signal is not two signals and a single signal cannot be independent of itself. Because the claims now distinguished between the input and output signals of the PLLs it is irrelevant that Jacobowitz's output clock signals are independent of each other as was previously critical.[1]

The Applicant and Examiner only address "independent" one other time, in connection with Kim. This discussion aligns with both the discussion of Jacobowitz and the Court's construction that "independence" is unrelated to a source. The Applicant first explains that Kim

---

[1] The applicant also distinguished the voltage architecture of Jacobowitz, explaining "Jacobowitz is silent with respect to at least the recited different sets of processor cores configured to receive independent supply voltages." *See* Prosecution History at 115.

3

fails to disclose the claimed voltage arrangement, including that the voltage signals are independent, because "Kim *discloses having each core, not a set of processor cores*, received a $V_{DD}$ (i.e., $V_{DD1}$, $V_{DD2}$, $V_{DD3}$, $V_{DD4}$)." *Id*. at 116 (emphasis added). In other words, there is not a first and second voltage because the claimed first and second voltage supply sets of cores, not individual cores, and no voltage in Kim supplies more than a single core. Without the claimed voltages, they cannot meet any of the further limitations, such as being independent of one another.

The Applicant further explains Kim fails to disclose the *entire* claimed clock signal architecture. The Applicant explained Kim's "apparatus comprising a multi-core processor … having a single clock source … [that] is then processed … and *provided to each of the cores*" does not disclose any of the claimed clock signals or that the first and second clock signals are independent. *Id*. at 116-17 (emphasis added). The Applicant repeats this for claims 10-11, 15, 18, and 22-23: "neither Jacobowitz nor Kim discloses having *sets of processor cores* configured to receive multiple and independent clock signals." *Id*. at 91 (emphasis added). The Applicant repeatedly identified the same problem for each "independent" limitation: no sets of processor cores. Because there are no sets of processor cores, there are no first and second supply voltages that they are configured to dynamically receive. The same is true of the first and second output clock signals and first and second PLLs. And the same is true for the first and second clock signals as input. Without sets of cores, these signals do not exist to be independent.

In contrast, AMD cannot show that the plain meaning of "signal" is "source", nor can it demonstrate lexicography or disavowal. Terms are "generally given their ordinary and customary meaning … [t]here are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as. His own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Ent. Am.*

4

*LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Because a signal is not a source and there is no support for such a definition or disavowal in the specification or prosecution history, AMD's construction must be rejected.

First, AMD argues its construction is the plain meaning of the independent term, but it cannot show different clock sources were ever considered in the specification. To begin, the specification never references a "clock source" or "oscillator" much less equate a clock signal with a clock source. *See* '339 Patent. Rather AMD points to an explanation that a set of cores may have an "independent clock domain defined by a clock signal" and goes on to point to the numbered clock signals in figure 3. Dkt. 26 at 5. But neither a reference to domains, much less a domain expressly defined by a *signal*, nor to number clock *signals* supports AMD's introduction of clock *sources*. Both the choice to claim clock *signals* and the complete lack of any disclosure of clock *sources* demonstrates AMD's construction is not the plain meaning of the independent term.

Second, AMD points to how the applicant addressed Jacobowitz to suggest this also confirms the "source" construction. It does not. AMD claims "the applicant distinguished Jacobowitz for having a single clock source," Dkt. 26 7-8, but this is clearly wrong. Indeed, the Applicant *never* references a "single clock source" in Jacobowitz. Instead, the only reference to a "single clock source" comes from the examiner's recitation of the applicant interview. *See* Dkt. 26-3 at 115-16, 124. When this singular reference is considered in context of Applicant's actual choice of words, it is entirely clear that applicant never intended to distinguish Jacobowitz for having a single clock *source*, but for having a single clock *signal*. The Applicant explained "*Jacobowitz* clearly shows that the microprocessor chip (e.g., 600) receives a system reference oscillator clock ($V_R$) and distributes $V_R$ to local oscillators 108." Dkt. 26-3 at 115. The focus is on

V<sub>R</sub> the clock signal, not the source. Again, this makes sense as the applicant chose to claim *signals* not *sources*. A single signal does not meet the first and second clock signal limitation.

As to Kim, the Applicant makes the same distinction, focusing not on a "single clock source" but on the clock *signal* that results and how it does not match the claims architecture. Indeed, in addressing Kim, AMD ignores most of the discussion. The Applicant did not contend Kim "fails to disclose or teach a first clock signal is independent from the second clock signal because instead, Kim discloses a single clock source." *See* Dkt. 26 at 9 (ellipses and quotations omitted). Rather the Applicant explained Kim failed to teach "a first set of processor cores and second set of processor cores configured to dynamically receive a first output clock signal of a first PLL having a first clock signal as input and a second output clock signal of a second PLL having a second clock signal, respectively" and the independent limitation because Kim's "*apparatus* comprising a multi-core processor … having a single clock source" where "[t]he clock signal form this single clocks source is then processes … and provided to each of the cores." Dkt. 26-3 at 116-17. AMD's exclusions are telling. The applicant explains there is not first and second clock signal, clearly then there cannot be a first clock signal that is independent of a nonexistent second clock signal. Likewise, rather than the independent limitation not being met because Kim uses a single clock source, it is because *how* Kim uses a single clock source, i.e. without a first and second set of cores.

Indeed, the Court's conclusion in *Qualcomm* is correct, there is no disclaimer to be found here, at a minimum none supporting AMD's construction. The Applicant does not "separately distinguish[] Kim as lacking 'independent' clock signals," the lack of first and second clock signals is *why* the independent limitation cannot be met. *See* Dkt. 26 at 11 (emphasis removed). Moreover, even if the Applicant separately addressed "independent," AMD may not take only the

6

distinguishing feature of Kim it likes for its construction. It must take the whole thing. That is the apparatus of Kim in addition to its singular clock source which is processed and provided to each of the cores. *See* Prosecution History at 116-17. As there is no disclaimer and AMD's construction does not capture the full scope of how the applicant distinguished Kim, AMD's construction should be rejected.

Third, AMD points to Redstone's remarks in response to the *MediaTek* IPR. But again there is no reference to clock sources, only signals. Contrary to AMD's contention, Redstone never "admitted" "that the claimed 'independent' clock signals require different clock sources." *See* Dkt. 26 at 10. Redstone never referenced a clock source in distinguishing Naffziger. Rather, as AMD clearly acknowledges, Redstone only argued Naffziger taught "a single external clock *signal*" and never provided "a separate, independent external clock *signal*." Dkt 26-9 at 22-23 (emphasis added). Redstone distinguished Naffziger for failing to have a first and second clock signal and argued *MediaTek* failed to show why even if a second clock signal were shown or somehow obvious, why it would be independent. *See* Dkt. 26-9. AMD never shows where clock sources are contemplated in the POPR, Redstone never associated "independent" with clock sources. The POPR likewise does not support AMD's construction.

Last, AMD raises two dictionary definition. Neither support its construction. First, "not depending upon another for its value" does not mandate two sources. Moreover, it is the first clock signal that is not to depend on the second, no source or prior signal is concerned. This is not "consistent" with AMD's construction at all, indeed one could program two sources to mirror each other and thus create dependent clock signals with different sources. AMD's construction complete misses the point. Second, "separate" does not suggest anything to do with the source of the clock signals. AMD's extrinsic evidence does not support its construction.

7

## III. CONCLUSION

For the reasons provided above, the independent term should be given its plain and ordinary meaning.

Dated: February 11, 2026                    Respectfully submitted,

/s/ *Reza Mirzaie*
RUSS AUGUST & KABAT
Reza Mirzaie, CA Bar No. 246953
Email: rmirzaie@raklaw.com
Marc A. Fenster, CA Bar No. 181067
Email: mfenster@raklaw.com
Neil A. Rubin, CA Bar No. 250761
Email: nrubin@raklaw.com
Christian W. Conkle, CA Bar No. 306374
Email: cconkle@raklaw.com
Jonathan Ma, CA Bar No. 312773
Email: jma@raklaw.com
Joshua Scheufler, TX Bar No. 24123406
Email: jscheufler@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Qi (Peter) Tong, TX Bar No. 24119042
Email: ptong@raklaw.com
8080 N. Central Expy., Suite 1503
Dallas, TX 75206
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

*Attorneys for Plaintiff Redstone Logics LLC*

8

9

## CERTIFICATE OF SERVICE

      I certify that on February 11, 2026, a true and correct copy of the foregoing document was electronically filed with the Court and served on all parties of record via the Court's CM/ECF system.

                                                  /s/ *Reza Mirzaie*
                                                Reza Mirzaie