# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# MIDLAND/ODESSA DIVISION

| | |
|---|---|
| REDSTONE LOGICS LLC, | |
| *Plaintiff*, | Case No. 7:25-CV-00182-DC-DTG |
| v. | |
| ADVANCED MICRO DEVICES, INC., | |
| *Defendant*. | |

**DEFENDANT ADVANCED MICRO DEVICES, INC.'S
REPLY CLAIM CONSTRUCTION BRIEF**

I.   INTRODUCTION

There is a dispute regarding the meaning of "independent" in the phrase "the first clock signal is independent from the second clock signal." As explained in AMD's Opening Brief (Dkt. 26; "Op. Br."), in view of the statements made during prosecution and in response to an IPR, "the first clock signal is independent from the second clock signal" means that each of those clock signals are generated by a different clock source. This is AMD's proposed construction, which is also consistent with the plain and ordinary meaning. Indeed, Redstone does not dispute that two different clock sources necessarily generate first and second clock signals that are independent of one another. Yet, in its Responsive Brief (Dkt. 28; "Resp."), Redstone still proposes the plain and ordinary meaning, incorrectly arguing that the statements made in the intrinsic record do not rise to disclaimer even though it does not dispute that those statements inform the meaning of the disputed phrase. Accordingly, a construction other than "plain and ordinary" is needed to identify the proper scope of this phrase and to resolve the parties' dispute.

II.  ARGUMENT

A.   Redstone's Disclaimer During the *MediaTek IPR*

During *MediaTek, Inc. et al v. Redstone Logics LLC,* IPR2025-00085, which is part of the intrinsic record, MediaTek argued that Naffziger discloses a single power control unit, but a POSITA would have found it obvious to duplicate that power control unit to provide separate, independent power control units (*e.g.,* a PLL) that each "receives as an input an external clock signal" that are independent from one another. Ex. 8 (Dkt. 26-9; MediaTek IPR POPR), at 22-23. Thus, MediaTek put forth a configuration that Redstone contends is within the plain meaning of "independent" first and second clock signals: each PLL receives its own independent clock signal that originates from one source, clk_ext. Critically, however, Redstone disputed the teachings of Naffziger in part because a POSITA would not have found it obvious or inherent to

1

"***supply*** the duplicated power control unit with a ***separate***, independent external clock signal**."** *Id.* (emphases added). This unequivocal and unambiguous statement is prosecution disclaimer. *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359-61 (Fed. Cir. 2017) ("statements made by a patent owner during an IPR proceeding can be considered during claim construction and relied upon to support a finding of prosecution disclaimer"). In its Responsive Brief, Redstone insists that it never referenced a clock source in distinguishing Naffziger and therefore, this statement does not support AMD's construction (Resp., at 7); but this misses the point. As shown above, the intrinsic record shows that Redstone expressly stated that one clock source (in Naffziger, external clock signal "clk_ext") is not enough—for there to be two independent clock signals, those clock signals must be generated from "a ***separate***, independent external clock signal." Therefore, Redstone's statements during the *MediaTek IPR* demonstrate that AMD's construction is correct.

### B.  Applicant's Disclaimer During Prosecution

Redstone's arguments regarding the inapplicability of the prosecution history are equally unavailing.

As explained in AMD's Opening Brief, during prosecution, the applicant requested an interview with an examiner to discuss the ways in which the claimed invention was patentably distinct over prior art Jacobowitz. Op. Br., at 3. The concept of "independent" clock signals was first introduced during that interview. However, as reflected in the examiner's summary, there were still two aspects of Jacobowitz that the applicant needed to overcome.

*First*, Jacobowitz disclosed two independent clock signals being fed to different processor cores. Thus, under the broadest reasonable interpretation of the then-pending claim language, which focused only on the clock signal inputs to the sets of cores, the claim language

"read[] on the clock output of the local oscillators of Jacobowitz and also read[] on the output of the PLLs shown in applicant's figure 3." Ex. 2 (Dkt. 26-3; '339 Patent File History), at 124. As shown below, one of Jacobowitz's oscillators provides a clock signal $v_0$ as an input to several cores and a different oscillator provides a clock signal $v_1$ as an input to several other cores. Ex. 3 (Dkt. 26-4; Jacobowitz), at Fig. 6. Thus, the '339 patent was not patentable over Jacobowitz from the perspective of the clock signals that are output to the cores from the respective PLLs of the '339 patent.



This required the applicant to further differentiate the claimed invention from Jacobowitz based on the inputs to the first and second PLLs (local oscillators).

*Second*, as shown above, Jacobowitz also discloses a clock signal that is provided to each of the local oscillators. Accordingly, "[a]pplicant's representative referred to figure 3 of the specification and stated that clock signals 1 through 3 were different/independent clock signals input to the PLLs while Jacobowitz disclosed using a single reference clock" (e.g., a clock

3

source). Ex. 2 ('339 Patent File History), at 124.[1] By highlighting Jacobowitz's single reference clock, and to secure patentability, the applicant demonstrated that the following potential embodiment of the '339 patent was not within the scope of the claims:



'339 patent, Fig. 2 (annotated). If the claimed first and second clock signals could have the same source as Redstone implicitly argues (depicted above), the claims of the '339 patent would read on Jacobowitz as that single clock source would "merely distribute[] a single signal [] to the local oscillators." Resp., at 3. Indeed, Redstone argues that in Jacobowitz, one clock source can generate only one signal "and a single signal cannot be independent of itself." *Id*. Logically, it follows, to have multiple signals, there must be multiple clock sources. Against this backdrop, Redstone expressly distinguished Jacobowitz for having a single clock source and thereby disclaimed the same from the scope of its claim.

---

[1] Redstone argues this statement lacks significance because it was made by the examiner, not the applicant. However, following the interview, that statement was adopted by applicant when it asserted that "the claims as presented in this response substantially reflect the discussions during the interview." Ex. 2 ('339 Patent File History), at 114.

4

Moreover, even *if* the significance of Jacobowitz having only one clock source is unclear as to the meaning of "independent" (it is not), the applicant's statements regarding Kim's singular clock source are unequivocal. Kim, like Jacobowitz, discloses a single clock source. But, as the applicant acknowledged, Kim discloses "[t]he clock signal from this single clock source is then processed (i.e., divided or multiplied) and provided to each of the cores." Ex. 2 ('339 Patent File History), at 116-117. The applicant distinguished Kim, arguing the claim requires "the first clock signal is independent from the second clock signal" and "[*i*]nstead, Kim discloses the apparatus comprising a multi-core processor … *having a single clock source.*" *Id.* (emphasis added).

For its part, Redstone asserts that this statement was used to argue that Kim does not disclose sets of processor cores and was not intended to limit the scope of independent clock signals. Resp., at 6. Aside from the factual inaccuracies in this argument in view of the above quoted language, it is also legally wrong. Even when "applicants distinguished their invention from the prior art in multiple ways … a disavowal, if clear and unambiguous, can lie in a single distinction among many." *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1377-78 (Fed. Cir. 2008). Further, the Federal Circuit has repeatedly held "the scope of surrender is not limited to what is absolutely necessary to avoid a prior art reference; patentees may surrender more than necessary." *Tech. Props. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1359 (Fed. Cir. 2017). Thus, it is of no moment that the applicant attempted to distinguish the claims of the '339 patent from Kim on multiple bases even though one basis might have been sufficient—its statements regarding Kim's single clock source is clear and limiting.

5

### C. Redstone's "Plain Meaning" Is Incorrect

In its Responsive Brief, Redstone asserts "[t]his term is simple and clear on its face, a first signal that does not depend on a particular second signal." Resp., at 1. It is not clear what Redstone means by "particular" in this proposal or why "independent" would be narrowly construed, which underscores the necessity of an affirmative construction.

## III. CONCLUSION

AMD respectfully requests that the Court adopt its construction for the "independent" limitation.

Dated: February 25, 2026                              Respectfully submitted,

*/s/ Jennifer Librach Nall*
Jennifer Librach Nall
Texas Bar No. 24061613
Michael Saulnier
Texas Bar No. 24131647
DLA PIPER LLP (US)
303 Colorado, Suite 3000
Austin, TX 78701
Tel: 512.457.7125
Fax: 512.457.7001
jennifer.nall@us.dlapiper.com
michael.saulnier@us.dlapiper.com

Daniel Valencia
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Tel: 202.799.4000
Fax: 202.799.5000
daniel.valencia@us.dlapiper.com

Chris M. Katsantonis
DLA PIPER LLP (US)
444 West Lake Street, Ste 900
Chicago, IL 60606
Tel: 312-368-2127
Fax: 312-251-5727
Email: chris.katsantonis@us.dlapiper.com

**ATTORNEYS FOR DEFENDANT
ADVANCED MICRO DEVICES, INC.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been filed on February 25, 2026 and made available to all counsel of record via the Court's CM/ECF system.

*/s/ Jennifer Librach Nall*
Jennifer Librach Nall
